IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QRG, LTD.,** | CIVIL NO. 1:06-CV-1777 |
| **Plaintiff,** | JUDGE SYLVIA H. RAMBO |
| v. | JURY TRIAL DEMANDED |
| **NARTRON CORPORATION,** | |
| **Defendant.** | |

# **M E M O R A N D U M**

This case arises out of a dispute over whether some of Plaintiff QRG, Ltd.'s ("QRG") products infringe Defendant Nartron Corporation's ("Nartron") patents. QRG seeks a declaratory judgment by the court, declaring that its products do not violate Nartron's patents (U.S. patents: 4,731,548; 4,758,735; 4,831,279; 5,087,825; 5,796,183 ("patents")). Nartron has filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that this court lacks subject matter jurisdiction. Nartron alleges that jurisdiction is lacking because no case or controversy exists. Since the facts support a finding that a case or controversy does exist with regard to at least one product and because it is within the court's declaratory judgment discretion, this court will deny Nartron's motion to dismiss in part.[1]

---

[1] The court will reserve ruling in part pending an opportunity for QRG to amend the complaint.

**I.      Background**

      **A.      Factual Background**

QRG is a corporation with its principal place of business in England that also maintains an office in Pittsburgh, Pennsylvania. Nartron is a corporation with its principal place of business in Michigan.

The parties have conducted business in the past and were communicating during the end of 2001. Nartron sent a letter to QRG, dated November 27, 2001, referencing the patents it holds and addressing QRG's specific QProx, QTouch, and QLevel products. (Doc. 22, Ex. G.) In the brief correspondence, Nartron wanted to bring QRG's attention to a possible conflict between its own patents and QRG's products. (*See id.*) The letter further notes a future possibility of Nartron licensing QRG products and asks for QRG's timely attention to the possible conflict. (*See id.*) QRG responded with correspondence dated January 2, 2002, claiming it had reviewed the patents and did not see possible infringement with its products. (Doc. 23, Ex. 3.) QRG invited Nartron's reply detailing the specific infringement issues. (*See id.*) Nartron replied with correspondence dated April 16, 2002, disagreeing with QRG's assessment and claiming QRG's product was "obviously an infringement of [its] patented technology." (Doc. 23, Ex. 5.) Nartron also notified QRG of its intent "to pursue this claim of infringement and suggest that [QRG] immediately contact [Nartron's] attorney." (*Id.*)

In addition, QRG alleges Nartron has repeatedly made oral and written threats of suit for patent infringement. (Declaratory J. Compl., Doc. 1 ¶ 7.)

### B.   Procedural History

Both parties agree on the procedural posture of this case.  On or about April 13, 2006, QRG filed a declaratory judgment suit against Nartron in the United States District Court for the Western District of Pennsylvania.  On May 8, 2006, Nartron filed a motion to dismiss for lack of personal jurisdiction.  On September 7, 2006, that motion was denied and the court further ordered the case transferred to the United States District Court for the Middle District of Pennsylvania.

On November 1, 2006, Nartron filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that no case or controversy exists.  Both sides have briefed the issue and the matter is ripe for disposition.[2]

## II.   Legal Standard - 12(b)(1) Motion to Dismiss

" 'A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint.' " *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002) (quoting *Ballenger v. Applied Digital Solutions, Inc.*, 189 F. Supp. 2d 196, 199 (D. Del. 2002)).  The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Coxson v. Pennsylvania*, 935 F. Supp. 624, 626 (W.D. Pa. 1996) (citing *Growth Horizons v. Delaware County*, 983 F.2d 1277, 1280-81 (3d Cir. 1993)).

---

[2] Subsequent to Nartron's motion to dismiss, on November 30, 2006, QRG filed a motion to clarify the case caption.  (Doc. 25.)  Briefing of that motion was deferred pending the resolution of this motion to dismiss.

A motion to dismiss under Rule 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. *See Carpet Group Int'l v. Oriental Rug Imps. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000). This case presents a facial challenge because Defendant does not dispute, at this juncture, the jurisdictional facts alleged in the complaint. *See* 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.30[4] (3d ed. 1999) (explaining the difference between a facial and factual challenge to subject matter jurisdiction pursuant to Rule 12(b)(1)). Therefore, the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a complaint that is merely deficient. *See, e.g., Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) (citations omitted).

### III.     Discussion

Nartron argues this court lacks jurisdiction because no case or controversy exists. First, Nartron argues that the plaintiff in this case is not the party that it has conducted business with in the past. It avers that "QRG, Ltd." and "Quantum Research Group, Ltd." are distinct entities and that it has only been acquainted with Quantum Research Group, Ltd. in the past, not QRG, Ltd. Nartron posits that no case or controversy could exist when this suit involves a party with

4

which it has never conducted business.  Second, Nartron alleges that no case or controversy exists under the two-prong test applicable to patent infringement declaratory judgment actions.  Nartron argues that even if it had conducted business with the Plaintiff in the past, the Plaintiff fails to meet the test's requirements.  The court will address each argument in turn.

### A. <u>Same Entities</u>

As a preliminary matter, Nartron claims that two separate and distinct entities exist: QRG, Ltd. and Quantum Research Group, Ltd.  (*See* Def.'s Answer to Declaratory J. Compl. at 1-2.)  Nartron admits that it conducted business in the past with a corporation headed by Harald Philipp, but that corporation was Quantum Research Group, Ltd., not QRG, Ltd., the party designated as plaintiff in this case.  (*See id.* (Nartron CEO, Norman A. Rautiola, claims "[he] had not heard of QRG until [this] litigation."))  In further support of its position, Nartron cites QRG's filing of five applications with the U.S. Patent and Trademark Office on June 5, and 6, 2006.  The applications name "Quantum Research Group, Ltd." as the owner and applicant.  Nartron points to this as evidence that two separate entities exist and its motion to dismiss should be granted because suit has been brought by the entity that Nartron did not conduct business with.

Nartron's contention seems disingenuous.  Nartron cites QRG's website in its discussion of QRG products and throughout its pleadings, yet claims it had not heard of "QRG, Ltd." prior to this litigation.  The "QRG, Ltd." designation is listed on the website in numerous locations.  Also, QRG's January 2, 2002,

correspondence to Nartron includes "Quantum Research Group Ltd." at the top and "QRG Limited" at the bottom.[3]

Nartron fails to provide significant evidence proving that QRG and Quantum Research Group are separate and distinct entities. Nartron also fails to establish that it was not aware of the existence of "QRG" prior to this litigation. Accordingly, the court will deny Nartron's motion to dismiss with respect to this issue.

In addition, in light of the foregoing, the court will grant QRG's motion to change the case caption.

### B. Patent Infringement Declaratory Judgment Test

The Declaratory Judgment Act provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act's actual controversy requirement parallels the federal jurisdictional requirement found in Article III of the Constitution. *Teva Pharms. USA, Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1331 (Fed. Cir. 2005).

Essentially, the court must determine " 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

---

[3] In addition, QRG points to a draft covenant not to sue in which "Quantum Research Group Ltd." is struckthrough and replaced with "QRG." (Pl.'s Opp'n to Def.'s Second Mot. to Dismiss, Doc. 23, Ex. 4.) But QRG provides neither a date for the draft covenant nor other evidence to establish that Nartron had notice of these changes. Accordingly, the court will not consider the draft covenant in the disposition of this matter.

issuance of a declaratory judgment.' " *Id.* (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996)).  If no actual controversy exists, then the court lacks jurisdiction to hear the case.  *Id.* at 1332.  However, even when the court determines that there is a controversy, it may exercise its discretion to decline jurisdiction.  *Id.*

The inquiry regarding whether an actual controversy exists in a suit seeking a declaration of patent non-infringement is two-fold.  *Id.*

> There must be both (1) an explicit threat or other action by the patentee [that] creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity by the declaratory judgment plaintiff [that] could constitute infringement, or concrete steps taken with the intent to conduct such activity.

*Id.*  In addition, with respect to the reasonable apprehension prong, " '[w]hen the defendant's conduct, including its statements falls short of an express charge, one must consider the totality of the circumstances in determining whether that conduct meets the first prong of the test.' " *Id.* at 1333 (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)).

Nartron contends that no case or controversy exists and this court lacks subject matter jurisdiction over the matter.  It argues that its 12(b)(1) motion should be granted because the requirements of the two-prong test are not met.  Nartron claims its actions fail to constitute a basis for a reasonable apprehension of suit in QRG, and QRG's activity does not evince concrete steps taken with the intent to conduct patent infringing behavior.

The issues before the court are as follows: (1) whether QRG had a reasonable apprehension that Nartron would sue QRG for infringement; (2) whether QRG demonstrated behavior that could constitute infringement or concrete steps

taken with the intent to infringe; and (3) whether the court has abused its declaratory judgment jurisdiction discretion in denying Nartron's motion.

### 1. First Prong: Express Threat or Reasonable Apprehension

QRG does not claim that Nartron expressly threatened to sue QRG for patent infringement. Therefore, this court will consider whether Nartron's conduct, under the totality of the circumstances, establishes a reasonable apprehension that Nartron will sue QRG. *See Teva*, 395 F.3d at 1332 (if no express threat, review under totality of circumstances).

QRG argues that the following Nartron acts establish grounds for its reasonable apprehension of an infringement suit: (a) Nartron's prior litigation history and (b) communication between both parties, including correspondence and phone conversations.

#### a. Prior Litigation History

QRG argues that Nartron's history of asserting its patents through litigation involving other companies establishes a reasonable apprehension of suit here. QRG relies on Nartron's general litigation history to support its claim.[4] (*See* Pl.'s Opp'n to Def.'s Second Mot. To Dismiss, Doc. 23, Ex. 6.) A patentee's prior litigation history is persuasive but not dispositive of whether a plaintiff has experienced a reasonable apprehension of suit. *See Teva*, 395 F.3d at 1333

---

[4] QRG has provided a docket search regarding patent cases involving Nartron. The printout evidences ten cases filed by Nartron from 1986 through 2006, with seven falling between 2001 and April 2006, the time period involved in this matter. The cases were all filed in the Eastern District of Michigan, save one filed in the Western District of Washington. Although all the cases were patent infringement actions, none involved QRG. Nartron filed a patent infringement suit against QRG in the Eastern District of Michigan subsequent to the case at bar. That case has recently been dismissed but does not factor into this court's analysis of the issues at hand.

(citations omitted).  In light of the court's review in this area, the litigation history can be a factor in the totality of circumstances review.  *Id.*  Furthermore, a plaintiff need not wait to file a declaratory judgment action until an infringement suit is filed by the patentee.  *See Arrowhead*, 846 F.2d at 738 ("The law does not require enterprises to keep their heads in the sand while a patentee picks them off one by one and at its leisure.").  But, an infringement suit against another filer, even to protect the same patent, does not conclusively establish a reasonable apprehension of suit.  *See Dr. Reddy's Labs., Ltd. v. Pfizer, Inc.,* No. Civ. A. 03-CV-726, 2003 WL 21638254, at *6 (D. N.J. July 8, 2003).

Nartron's past patent infringement litigation against other companies[5] is insufficient to establish that, under the instant circumstances, QRG has a reasonable apprehension of suit.  In the instant case, QRG claims Nartron's past litigation tactics created its apprehension of suit.  QRG relies on the ten patent infringement suits filed by Nartron, none of which involve QRG as a party.  Although these prior suits are relevant, putting QRG on notice that Nartron follows the practice of enforcing its patents, they are not dispositive.  A patentee's history of enforcing patents generally does not in and of itself provide any indication regarding the patentee's intentions regarding other patents.  *See Mutual Pharm. Co. v. Pfizer Inc.*, 307 F. Supp. 2d 88, 93-94 (D.D.C. 2004); *Dr. Reddy's Labs*, 2003 WL 21638254, at *7.

Furthermore, "[i]n cases where courts have found prior litigation sufficiently threatening, either (1) the defendant referenced that litigation in some

---

[5] Whether Nartron's past litigation involves the same patents involved in this case cannot be determined from the materials submitted by the parties.  The docket sheet provided by QRG only references the other cases as "patent" cases.

communication to the plaintiff, or (2) there was ongoing litigation between the parties over a series of closely related patents involving the same technology." *Apotex, Inc. v. Pfizer Inc.*, 385 F. Supp. 2d 187, 194 (S.D.N.Y. 2005) (internal citations omitted). No such communication or ongoing litigation between the parties involving the same technology exists here. Accordingly, Nartron's prior history of litigation regarding its patents fails to establish a reasonable apprehension of suit for QRG.

### b. Communication Between Parties

A general statement that one party intends to enforce its patents does not necessarily create a reasonable apprehension of suit. *Torpharm, Inc. v. Pfizer Inc.,* No. Civ. 03-990-SLR, 2004 WL 1465756, at *41 (D. Del. June 28, 2004), *vacated as moot*, 125 Fed. Appx. 987 (Fed. Cir. 2005) (citations omitted). Yet, a reasonable apprehension can result without *any* communication between the defendant and plaintiff. *See Arrowhead*, 846 F.2d at 738 (emphasis added). This "sometimes subtle line" then, should not focus exclusively on the specific words of the parties, but rather on whether an actual controversy exists. *See EMC*, 89 F.3d at 811-12.

In *EMC*, the court recognized that there are not "magic words" that a party must iterate to invoke a reasonable apprehension in the other party and that parties often "couch their exchanges in terms designed either to create or defeat declaratory judgment jurisdiction." *Id.* at 812. But, in that case, the court was persuaded by a patentee's letter that advised of its "inclination to 'turn the matter over to' [its] litigation counsel 'for action.' " *Id*. The case at bar is factually analogous. Nartron's April 16, 2002, letter advised that it "intend[ed] to pursue [its]

claim of infringement and suggest[ed] that [QRG] immediately contact [Nartron's] attorney." (Pl.'s Opp'n to Def.'s Second Mot. to Dismiss, Doc. 23, Ex. 5.) Nartron further stated it would "not simply stand by" QRG's assertions that its products did not infringe Nartron's patents. (*Id.*)

Nartron included language that could have instilled a reasonable apprehension in QRG. Nartron's letter notified QRG that it had considered QRG's suggestions and that it was moving forward to enforce its patents. This enforcement was reasonably believed to be executed through the force of litigation. Although the letter did not retire the possibility of future negotiations, it plainly stated that further discussions should be directed to its attorney.

Nartron argues that this letter, sent in 2001, could not have created a reasonable apprehension of suit on behalf of QRG now because of the lapse in time. (Def.'s Br. in Supp. Of Mot. to Dismiss, Doc. 22, at 13-14.) Yet, paragraph seven of QRG's complaint alleges that Nartron has repeatedly threatened QRG through both oral and written communications. (Declaratory J. Compl., ¶ 7, Doc. 1.) This court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) (citations omitted).

Accordingly, viewed in light of the totality of the circumstances at this stage of the litigation, QRG could have a reasonable apprehension of Nartron filing an infringement suit. Nartron's oral and written threats towards QRG satisfy the reasonable apprehension prong.

11

### 2.     Second Prong: Plaintiff's Conduct

The second prong of the actual controversy test requires "present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity." *Teva*, 395 F.3d at 1332 (citing *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1380 (Fed. Cir. 2004)). One court interpreted this to merely require "a showing that plaintiff's conduct evidences a real interest in an activity that *may*, potentially, be enjoined." *Arrowhead*, 846 F.2d at 731 n.10 (emphasis in original).

Nartron contends that QRG failed to recite in its complaint that it produces or is preparing to produce any allegedly infringing product. Yet paragraph seven of QRG's complaint denotes Nartron's charge that QRG's Form QProx product infringes its patented technology. QRG's reference to its "Form QProx product" is specific enough to satisfy the second prong of the test. This assertion identifies, by name, a real interest that may be enjoined. Nartron's motion to dismiss will be denied with respect to QRG's Form QProx product.

On the other hand, Nartron is correct that QRG fails to specifically identify other allegedly infringing products. QRG simply refers to "capacitive touch sensor products and related components." (Declaratory J. Compl., ¶ 1, Doc. 1.) This assertion is insufficient to satisfy the second prong of the test. It is unclear what products and components QRG is referring to. The phrase lacks the specificity required to evidence a real interest that could be enjoined by the court.

However, the court will reserve ruling on the motion to dismiss with regard to the "capacitive touch sensor products and related components" issue and will grant leave to amend. If justice requires, the court may allow any party to

amend its pleadings. *See* Fed. R. Civ. P. 15(a); *see also Parker*, 363 F.3d at 236 ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."). Since the court does not find grounds of bad faith, undue delay, prejudice, or futility at this stage, it is fair and just to allow QRG to amend its complaint to specifically identify its allegedly infringing capacitive touch sensor or other products.

### 3. QRG's Alleged Misuse of the Court's Declaratory Judgment Jurisdiction

Even if the court determines that there is a case or controversy, it may exercise its discretion to grant or decline declaratory judgment jurisdiction. *Teva*, 395 F.3d at 1332. The court has recognized that this is a "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The *EMC* court reminds us that this discretion is not "unfettered" and jurisdiction can be declined as long as the district court acts consistent with the purposes of the Declaratory Judgment Act. *See EMC*, 89 F.3d at 813 (citations omitted).

After establishing that QRG has met the two-prong test for a case or controversy in at least one respect, it is not an abuse of this court's discretion to grant declaratory judgment jurisdiction. Unlike in *EMC*, granting jurisdiction in this case does not frustrate the purposes of the Declaratory Judgment Act. *Id.* at 814 (determining case or controversy existed but district court refused to grant jurisdiction because parties still negotiating and grant would create incentive structure for plaintiffs to seek unfair bargaining position).

**IV.        Conclusion**

        For the foregoing reasons, the court will deny Nartron's Motion to Dismiss for lack of subject matter jurisdiction in part.  The court will reserve ruling in part and grant QRG leave to file an amended complaint.  In addition, the court will grant QRG's motion to change the case caption.  An appropriate order will issue.

                                                    s/Sylvia H. Rambo
                                                   SYLVIA H. RAMBO
                                                United States District Judge

Dated:  March 2, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QRG, LTD., | CIVIL NO. 1:06-CV-1777 |
| Plaintiff, | JUDGE SYLVIA H. RAMBO |
| v. | JURY TRIAL DEMANDED |
| NARTRON CORPORATION, | |
| Defendant. | |

# O R D E R

For the reasons stated in the accompanying memorandum of law, **IT IS HEREBY ORDERED** that:

1) Defendant's Motion to Dismiss (Doc. 21) is **DENIED in part**, as follows:

a) The Court will reserve ruling with regard to the "capacitive touch sensor products and related components" issue and grant Plaintiff leave to amend the complaint on or before April 2, 2006.

b) The motion is denied in all other respects.

2) Plaintiff's Motion to Clarify the Case Caption (Doc. 25) is **GRANTED.** The Clerk of Court shall change the case caption on the docket so that "QRG, Ltd., Plaintiff" shall now read: "QRG, Ltd., a/k/a Quantum Research Group, Ltd., Plaintiff." All future filings shall display this caption.

      3) An amended case management order will issue.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: March 2, 2007.