IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QRG, LTD. a/k/a QUANTUM RESEARCH GROUP, LTD.,** | CIVIL NO. 1:06-CV-1777 |
| Plaintiff, | JUDGE SYLVIA H. RAMBO |
| v. | JURY TRIAL DEMANDED |
| **NARTRON CORPORATION,** | |
| Defendant. | |

# **M E M O R A N D U M**

This case arises out of a dispute over whether some of Plaintiff QRG, Ltd.'s ("QRG") products infringe Defendant Nartron Corporation's ("Nartron") patents. QRG seeks a declaratory judgment that its QProx, QTouch, QSlide, QWheel, QMatrix, and QField product lines do not violate Nartron's patents (U.S. patents: 4,731,548; 4,758,735; 4,831,279; 5,087,825; 5,796,183 ("patents")). Nartron has filed an answer to QRG's amended declaratory judgment complaint and asserted a counterclaim that QRG's QProx product line infringes Nartron's 4,758,735 patent ("'735 patent"). Before the court is QRG's motion to strike that counterclaim (Doc. 34) based on inexcusable delay, prejudice, bad faith, and futility. Nartron asserts that QRG fails to articulate any prejudice and that Nartron's right to answer QRG's amended complaint includes the right to assert any counterclaims that it may have. The court finds that any prejudice to QRG will be minimal and that permitting Nartron to assert its counterclaim here is in the interests of justice. Accordingly, the court will deny QRG's motion to strike Nartron's counterclaim.

I.        **Background**

The facts relevant to the court's instant inquiry are as follows.[1]  On April 13, 2006, QRG filed a declaratory judgment suit against Nartron in the United States District Court for the Western District of Pennsylvania.  The complaint sought a declaration that QRG's form QProx product line and other "capacitive touch sensor products and related components" did not infringe Nartron's patents.

On May 8, 2006, Nartron filed a motion to dismiss the complaint for lack of personal jurisdiction.  The Western District of Pennsylvania granted limited discovery related to the issue of personal jurisdiction, with a deadline of May 30, 2006.  On September 7, 2006, the court denied Nartron's motion to dismiss and ordered the case transferred to the United States District Court for the Middle District of Pennsylvania.

On October 6, 2006, Nartron filed its answer, which did not include any counterclaims.  On November 1, 2006, Nartron filed a motion to dismiss for lack of subject matter jurisdiction, and, in the alternative, for failure to state a claim.  On March 2, 2007, the court granted QRG an opportunity to amend the complaint with respect to its allegations regarding the "capacitive touch sensor products and related components," deferred ruling with respect to that issue,[2] and denied Nartron's motion to dismiss in all other respects. (Doc. 30.)  In a separate order on March 2, 2007, the court also extended the discovery and other case management deadlines by thirty days.  (Doc. 31.)

---

[1] The court previously set forth the general facts of this case in its March 2, 2007 Memorandum and Order disposing of Nartron's motion to dismiss the complaint (Doc. 30).

[2] Given QRG's subsequent amendment of the complaint, this issue is moot.

QRG subsequently filed an amended complaint on March 8, 2007, which identified QRG's QTouch, QSlide, QWheel, QMatrix, and QField, in addition to QProx, product lines as the specific products at issue in the declaratory judgment action. On March 19, 2007, Nartron timely filed its answer to the amended complaint, which included a counterclaim that QRG's QProx product line infringed Nartron's '735 patent. Fact discovery closed on March 30, 2007.

In related litigation, on August 25, 2006, Nartron filed a declaratory judgment complaint against QRG in the United States District Court for the Eastern District of Michigan, which similarly asserted that QRG infringed, or was prepared to infringe, Nartron's '735 patent. QRG subsequently filed a motion to dismiss that complaint, which the Michigan district court granted on February 12, 2007. That court dismissed Nartron's complaint, in relevant part, based on the "first-filed" rule, after comparing that case to the case before this court. The Michigan district court reasoned that "[a]lthough the Pennsylvania action is more comprehensive in that it involves more patents, both actions call into question the '735 patent and Nartron's rights thereunder." *Nartron Corp. v. Quantum Research Group, Ltd.*, 473 F. Supp. 2d 790, 796 (E.D. Mich. 2007). The court further considered the cases to "cover the same ground and hinge on the same legal and factual determinations." *Id.*

In the instant matter, QRG filed a motion to strike Nartron's counterclaim on March 23, 2007. The issues have been briefed and the matter is ripe for disposition.

## II.          **Legal Standard – Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Pleading amendments are governed by Federal Rule of Civil Procedure 15, which provides in part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

Fed. R. Civ. P. 15(a). Moreover, Federal Rule of Civil Procedure 13 specifically addresses the ability to amend an answer in order to add a counterclaim, providing that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Civ. P. 13(f).

The Third Circuit has not spoken on the specific issue before this court: whether a defendant may add a counterclaim, as of right, when responding to an amended complaint. *Mun. Revenue Servs., Inc. v. Xspand, Inc.*, No. 4:05CV671, 2006 WL 91358, at *2 (M.D. Pa. Jan. 12, 2006). Other courts considering whether, and the extent to which, a defendant may assert new counterclaims when responding to an amended complaint have developed different approaches, sometimes

characterized as "permissive, narrow, and moderate." *See S. New England Tel. Co. v. Global Naps, Inc.*, Civil Action No. 3:04-cv-2075 (JCH), 2007 WL 521162, at *1 (D. Conn. Feb. 14, 2007.) Although a Middle District of Pennsylvania court recently applied the permissive approach, it did so in the absence of a showing of prejudice. *See Xspand*, 2006 WL 91358, at *1-2.

Moreover, even though the various "approaches" may have developed as a means of defining the scope of Rule 15(a)'s "in response to" language, *see id.*, at *1 (referring to Fed. R. Civ. P. 15(a) ("A party shall plead *in response to* an amended pleading . . . .") (emphasis added)), the court is not persuaded that the emphasis should be on choosing a particular "approach," and imposing rigid rules based on other courts' characterizations of their decisions. The principles set forth in the Federal Rules provide the appropriate starting point, and a sufficient basis, for the instant inquiry, without being driven by a desire to label the court's analysis. Rules 13 and 15 place the decision squarely within the court's discretion (after a point, amendments are granted only "by leave of the court"); thus, any approach is guided at the outset by the requirements of the Federal Rules. *Xspand*'s adoption of the permissive approach only after it made a prejudice determination is consistent with this view. *See* 2006 WL 91358, at *1-2.

Accordingly, the court will decide whether to strike Nartron's counterclaim based on the following considerations, derived from the applicable Federal Rules: 1) whether QRG has established prejudice; 2) whether Nartron has sought leave of the court; 3) whether Nartron has established oversight, inadvertence, or excusable neglect; and 4) whether justice requires allowing Nartron to add the counterclaim. *See* Fed. R. Civ. P. 13, 15.

**III.     Discussion**

In an attempt to frame the court's inquiry, the court acknowledges that QRG's amended complaint is not substantively different in scope or nature from the original complaint; it simply identifies the specific products referred to by the overly general "capacitive touch sensor products" language. Thus, the amended complaint does not, aside from the mere fact that it was amended, provide any new basis in particular that would directly trigger the need for the counterclaim asserted by Nartron in its amended answer. The court does not consider this factual posture alone to be a sufficient basis for striking the counterclaim, nor does it view it as a determinative factor regarding prejudice or any of the other relevant questions before the court.[3]

To that end, QRG's arguments in favor of striking Nartron's counterclaim include prejudice, inexcusable delay, bad faith, and futility. Nartron disputes these arguments and maintains that when QRG filed its amended complaint, it "opened the door" to any responses, defenses, and counterclaims that Nartron chose to bring at that time. At the outset, the court notes that, by virtue of Nartron's position that, "as of right," it was permitted to amend the answer however it chose once QRG amended the complaint, Nartron has not sought leave of the court to bring the counterclaim, nor has it attempted to argue that justice favors granting

---

[3] Similarly, the fact that QRG amended the complaint subsequent to a court order is not a determinative factor in the court's analysis. The parties dispute whether and how this may distinguish the instant case from cases where plaintiffs voluntarily sought leave to amend their complaints. First, the court finds such distinctions to be arguable because if QRG's complaint had not been deficient in some respects, amendment would not have been necessary. Moreover, it was ultimately QRG's choice whether to amend the complaint or risk losing the opportunity to seek relief associated with products other than the QProx line of products. Second, even assuming this distinction, it would not be the only fact that would inform the court's decision.

leave to do so. However, under the circumstances of this case, it is not in the interests of efficiency and conservation of judicial resources to summarily strike the counterclaim on such grounds. Instead, the court will consider the facts relevant to the question of what justice may require, as well as the facts that factor into the court's determinations regarding prejudice, inexcusable delay, bad faith, and futility.

### A. Prejudice

The court agrees with QRG that adding Nartron's counterclaim will likely require additional discovery and delay trial somewhat, but not to the extreme that QRG argues. The legal and factual issues associated with Nartron's counterclaim very clearly fall within the scope of QRG's declaratory judgment action. The court acknowledges that QRG need only show that at least one limitation is missing from the accused device, *see Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1371, 1380 (Fed. Cir. 1998), while Nartron needs to show the presence of every limitation in the accused device, *see id.* at 1376. The court does not think that this will alter the scope of the litigation as drastically as QRG suggests and would expect that at least some of the relevant discovery has already taken place and need not be duplicated. Nor would the court expect additional discovery related to the issue of damages to result in the kind of delays or expenses that would severely prejudice QRG. In any event, the court can certainly set a discovery schedule that would minimize any such delays.

### B. Inexcusable Delay

QRG asserts inexcusable delay based on Nartron's failure to bring its infringement counterclaim five months earlier, when it filed its October 6, 2006 answer, if not years ago, following its alleged initial threats of infringement. As a

7

threshold matter, the court will not consider the years in between the threats and the commencement of this action; such reasoning could just as easily be applied to QRG's decision to wait until 2006 to file its declaratory judgment complaint. The court will not second guess either party's litigation decisions or strategy in this regard.

With respect to Nartron's failure to assert the counterclaim in its October 6, 2006 answer, the court does not view this time period as one of the extreme delay proposed by QRG. Nartron had been pursuing the claim since August 25, 2006, when it commenced the independent declaratory judgment infringement action in Michigan. Again, the court will not second guess Nartron's litigation decisions, but notes that Nartron asserted the counterclaim here within weeks of the Michigan district court's February 12, 2007 dismissal of its action. Accordingly, on these facts, the court does not find inexcusable delay.

### C. Bad Faith

QRG generally argues that Nartron's delay in asserting its counterclaim, along with its conduct throughout the litigation, amounts to bad faith. In this regard, the court notes that both parties devote a fair amount of time in their briefs to trading barbs over discovery related conduct. The court will not respond to suggestions of discovery disputes, which are not properly raised here.[4] Otherwise, the court finds that the descriptions of the related conduct do not amount to anything more than the kind of barely-tempered acrimony and rancor that, unfortunately, all too often accompany today's adversarial process. Moreover, the court does not find

---

[4] Both parties have demonstrated that they are well aware of the court's procedure for properly raising such disputes, if they are unable to resolve them on their own after making a good faith effort to do so.

that Nartron's conduct with respect to how and when it asserted its claim amount to anything more than its right to pursue its chosen litigation strategy.

### D. Futility

QRG also attempts to establish the futility of Nartron's infringement counterclaim based on Nartron's admission that the '735 patent has expired. (Doc. 33 ¶ 13.) However, the expiration of a patent only precludes injunctive relief, not compensatory damages for past infringement. *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994) (Damages are "often the sole remedy for past infringement."). Accordingly, the court does not find that the counterclaim is futile.

### E. Interests of Justice

The Michigan district court's dismissal of Nartron's declaratory judgment action factors heavily into the court's assessment of the interests of justice involved here. One of the Michigan district court's explicit reasons for dismissing Nartron's infringement claim was the existence of this action and its coverage of the same factual and legal issues. *Nartron*, 473 F. Supp. 2d at 796. In addition, once the Michigan action was dismissed, Nartron raised the counterclaim here at the next reasonable opportunity, given the status of the instant proceedings.

In addition, to put Nartron in the position of having to file a separate action would result in the duplication of judicial resources. Even though permitting the counterclaim now may result in additional time and expense for discovery and some delay of trial, the overall result would likely be less than the time and expense associated with a separate lawsuit. Thus, the court finds that to deny the counterclaim would be contrary to the interests of justice and that, on balance, the interests of justice outweigh the limited prejudice to QRG.

**IV.      Conclusion**

For the foregoing reasons, the court finds no inexcusable delay, bad faith, or futility in connection with Nartron's counterclaim. In addition, the court finds that any prejudice to QRG is limited and outweighed by the interests of justice in permitting Nartron to assert its counterclaim. Accordingly, the court will deny QRG's motion to strike the counterclaim. An appropriate order will issue.

                                            s/Sylvia H. Rambo
                                            SYLVIA H. RAMBO
                                            United States District Judge

Dated: April 23, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QRG, LTD. a/k/a QUANTUM RESEARCH GROUP, LTD.,** : | **CIVIL NO. 1:06-CV-1777** |
| Plaintiff, : | **JUDGE SYLVIA H. RAMBO** |
| v. : | **JURY TRIAL DEMANDED** |
| **NARTRON CORPORATION,** : | |
| Defendant. : | |

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Plaintiff QRG's motion to strike the counterclaim in Defendant Nartron's answer to the amended complaint (Doc. 34) is **DENIED**. The court will schedule a telephonic conference call to address any related discovery and scheduling issues.

                                                                                s/Sylvia H. Rambo
                                                                                SYLVIA H. RAMBO
                                                                                United States District Judge

Dated: April 23, 2007.