IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QRG, LTD.,** | CIVIL NO. 1:06-CV-1777 |
| Plaintiff, | JUDGE SYLVIA H. RAMBO |
| v. | JURY TRIAL DEMANDED |
| **NARTRON CORPORATION,** | |
| Defendant. | |

# **M E M O R A N D U M**

This case arises out of a dispute over whether some of Plaintiff QRG, Ltd.'s ("QRG") products infringe some of Defendant Nartron Corporation's ("Nartron") patents. QRG seeks a declaratory judgment by the court, that its QProx, QTouch, QSlide, QWheel, QMatrix, and QField product lines do not infringe U.S. patents: 4,731,548; 4,758,735; 4,831,279; 5,087,825; 5,796,183 ("patents"). Nartron asserts a counterclaim that some of QRG's QProx products infringe the 4,758,735 patent ("the '735 patent"). Presently, the parties are at an impasse with respect to their attempts to narrow the patents and products at issue for the purposes of discovery. The parties' inability to overcome this impasse on their own has compelled the court to undertake a more searching review. In doing so, the court revisits its earlier consideration of the requirements of Article III and the Declaratory Judgment Act. The court now finds that it lacks subject matter jurisdiction over all but a handful of claims that involve products specifically identified throughout the course of the litigation. Accordingly, the court will dismiss all of QRG's claims that are based on nothing more than broad

identifications of product lines.  The only surviving claims are those involving the five named patents and QRG's QProx E2SR, QT110, QT113, QT9701, and QT1106 products.  The court's findings today should sufficiently narrow the scope of discovery and allow this case, at long last, to proceed.[1]

**I.        Background**

QRG commenced this action by filing a declaratory judgment complaint on April 13, 2006, in the United States District Court for the Western District of Pennsylvania (Doc. 1-1).  Nartron subsequently filed a motion to dismiss for lack of personal jurisdiction.  The Western District court denied the motion and transferred the case to this court on September 7, 2006 (Doc. 1-47).  On November 1, 2006, Nartron filed a motion to dismiss for lack of subject matter jurisdiction (Doc. 21).  In a March 2, 2007 order (Doc. 30), the court found that QRG met the requirements of Article III and the Declaratory Judgment Act in establishing that a case or controversy existed, with respect to its identification of the Form QProx product line.[2]  The court reserved its ruling with respect to QRG's identification of "a family of capacitive touch sensor products," finding that the description failed to satisfy the case or controversy requirement because it was too general to identify a specific product.  The court permitted QRG to amend the complaint; as a result QRG filed an amended complaint on March 8, 2007 (Doc. 32) that identified its QProx, QTouch, QSlide, QWheel, QMatrix, and QField product lines as the products at issue.

---

[1]On July 27, 2007, the parties filed a Joint Motion to Revise the Case Management Order (Doc. 60) to allow settlement-related discussions and/or a mediation.  The court will defer consideration of the motion pending the outcome of such discussions.

[2]The court's instant ruling reconsiders that conclusion.

2

Nartron filed its answer to the amended complaint (Doc. 33) on March 19, 2007, and at that time asserted its counterclaim of patent infringement. QRG subsequently filed a motion to strike the counterclaim (Doc. 34), which the court denied on April 23, 2007 (Doc. 39). On May 7, 2007, QRG filed its reply/answer to Nartron's counterclaim (Doc. 41).

As the parties proceeded to discovery, disputes quickly arose concerning the scope and necessity of the information sought. In addition, on May 7, 2007, Nartron filed two motions for partial summary judgment – one addressing the issue of enforceability of the patents (Doc. 42), the other addressing the issue of the validity of the patents (Doc. 47). Following a May 10, 2007 scheduling conference, the court stayed briefing of the summary judgment motions to afford the parties time to jointly determine whether the issues and patents in this case could be narrowed. (See Doc. 54). Nartron was directed to inform the court, no later than August 17, 2007, whether it intends to let the existing motions stand or to withdraw the motions in order to file a new dispositive motion. (*Id.*)

On June 14, 2007, Nartron voluntarily filed a status report addressing the parties' unsuccessful attempts to narrow the issues and patents involved (Doc. 55). The court held a telephonic conference call on June 26, 2007, and, subsequently, requested a status report from QRG that responded to the issues raised in Nartron's report. QRG filed said status report on July 9, 2007 (Doc. 58). On July 13, 2007, Nartron filed a reply to QRG's report (Doc. 59). The status reports, as well as the positions conveyed by the parties during multiple conference calls, have

made it clear to the court that the parties have reached an impasse – the court is not confident that they will soon, if ever, overcome this impasse on their own.[3]

## II.        Discussion

It is well-settled that the court may *sua sponte* dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("*Whenever* it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") (emphasis added). To that end, the court has reviewed the parties' explanations of the patents and issues involved in the instant case, as well as the exhibits and affidavits that the parties have filed at various times throughout this litigation. In addition, the court has re-examined the requirements of Article III and the Declaratory Judgment Act, which it considered when disposing of Nartron's motion to dismiss for lack of subject matter jurisdiction.

The Declaratory Judgment Act provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

---

[3] The court recognizes that the parties now indicate they are willing to engage in settlement discussions or mediation; however, they make a point of stating in their joint motion that "there is no guarantee" that they can reach an amicable resolution. (Doc. 60 ¶ 4.) Although such a qualification is a given in any settlement or mediation efforts, in light of the history of the litigiousness between the parties, and their apparent need to expressly state the qualification, the court will proceed with its current review. If anything, clarification of the patents and products at issue as set forth here will narrow the focus of any alternative dispute resolution methods pursued by the parties. In addition, given the court's instant ruling, the court will strike both of Nartron's motions for partial summary judgment. If the court issues an amended case management order, it will include a new dispositive motions deadline, should either party wish to file a motion that is in accord with the narrowed scope of this case.

could be sought." 28 U.S.C. § 2201(a).  The Act's actual controversy requirement parallels the federal jurisdictional requirement found in Article III of the Constitution.  *Teva Pharms. USA, Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1331 (Fed Cir. 2005).  Essentially, the court must determine "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment.'"  *Id.*  (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed Cir. 1996)).  If no actual controversy exists, then the court lacks jurisdiction to hear the case.  *Id.* at 1332.

The inquiry regarding whether an actual controversy exists in a suit seeking a declaration of patent non-infringement is two-fold.  *Id.*

> There must be both (1) an explicit threat or other action by the patentee [that] creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity by the declaratory judgment plaintiff [that] could constitute infringement, or concrete steps taken with the intent to conduct such activity.

*Id.*  In order to meet the requirements of Article III and the patent laws, a party must identify a specific product as opposed to an entire product line.  *Laitram Corp. v. Cambridge Wire Cloth Co.*, 919 F.2d 1579, 1580-82 (Fed. Cir. 1990), *superseded by statute in non-relevant part*.[4]  This premise guided the court's conclusion in *Interdigital Technology Corp. v. OKI America, Inc.* that "[b]oth the controversy requirement of Article III and the patent case law preclude[d the] court from rendering any decision regarding infringement or potential infringement [that was]

---

[4]The parties appear to be in agreement that identification of a specific product rather than an entire product line is required.  (*See* Doc. 55 at 3; Doc. 58 at 10.)

not limited to specific accused products before the court." 845 F. Supp. 276, 282 (E.D. Pa. 1994) (citing *Laitram*, 919 F.2d 1579).  The *Interdigital* court did not dismiss the case though, because it determined that an industry standard provided a sufficient means to identify specific products. *Id.*  In contrast, no such standard or sufficiently limiting descriptor is present here – the phrase "capacitive touch sensor products" is simply too broad, as the court previously held, to identify specific products at issue and meet the requirements of the reasonable apprehension prong.  In addition, in consideration of the foregoing, the court now finds that QRG's broad identification of the QProx, QTouch, QSlide, QWheel, QMatrix, and QField product lines, without more, fails to establish a justiciable case or controversy.

Similarly, the court finds that Nartron's counterclaim fails to satisfy the "case or controversy" requirement.  Arguably, Nartron's description of embodiments that "employ direct current powered touch controlled switching circuits" could provide a sufficient means by which to identify specific products (comparable to the standard applied in *Interdigital*).  However, the parties' failure to do so in the considerable time afforded to them demonstrates otherwise.  Therefore, the court's identification of specific products at issue in the instant litigation will apply to Nartron's counterclaim, as well as to QRG's declaratory judgment action.

Upon consideration of the parties' various submissions, the court considers the following to be relevant to the question of whether a case or controversy has been established over the potential infringement of any specific products:

1) A November 27, 2001 letter from Norman Rautiola, Nartron CEO, to Hal Philipp, QRG Managing Director, which identified the five patents named in

this litigation and went on to state: "We have recently been made aware of your family of 'capacitive sensing' products, in some cases as referred to QProx, QTouch and QLevel." (Doc. 22-3., Ex. G.; Doc. 58-6, Ex 3.);

2) QRG's January 2, 2002 letter in reply, which denied infringement but provided no further clarification. (Doc. 23-5, Ex. 3.; Doc. 58-7, Ex. 4.);

3) Nartron's response, in a letter dated April 16, 2002, where Nartron stated that "page 5 of your Form QProx (enclosed) obviously a ground or $V_{cc}$ makes your chips useful. This device is obviously an infringement of our patented technology. We intend to pursue this claim of infringement and suggest that you immediately contact our attorney . . . ." (Doc. 23-7, Ex. 5.; Doc. 58-8, Ex. 5.) QRG's status report indicates that Nartron enclosed product information for QRG's QProx QT113 product with the letter. (Doc. 58 at 5.);

4) Mr. Philipp's declaration, filed with QRG's opposition to Nartron's motion to dismiss for lack of subject matter jurisdiction (Doc. 23-2; Doc. 58-9, Ex. 6), which states that he "received phone calls in 2003, 2004, and 2005 from representatives of Nartron that threatened QRG with infringement litigation," but does not provide any greater level of detail regarding specific products;

5) Nartron's March 16, 2007 letter, which indicated that the QRG products that had been the subject of Nartron's 2001 and 2002 communications regarding infringement were QProx-E2SR, QT110, QT113, and QT9701. (Doc. 58-11, Ex. 9.); and

6) Nartron's June 29, 2007 letter, in which Nartron indicated that "QRG's QT1106 and other QRG products [that] have the same or similar features of QT1106, infringe claim 27 of the '183 patent." (Doc. 59-2, Ex. 4.)

QRG correctly notes in its status report that this court's jurisdiction arises from Nartron's threats, in the sense that it is the substance of Nartron's communications that provides a basis for defining the contours of QRG's reasonable apprehension of suit.  (Doc. 58 at 4.)  QRG also accuses Nartron of improperly attempting to conduct a "fishing expedition" for the purpose of identifying possible infringement regardless of whether it previously had any basis to support an infringement claim.  QRG is correct that *Micro Motion, Inc. v. Kane Steel Co., Inc.* precludes such an endeavor.  894 F.2d 1318, 1327 (Fed Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim" and "[a]n unfounded suspicion regarding . . . infringement does not support discovery into that subject matter.").  However, QRG is likewise prohibited from relying on discovery as a fishing expedition to identify a reasonable apprehension of infringement with respect to specific products.  QRG maintains that "from the very beginning, [it] has tried to get Nartron to identify the patent(s) and product(s) at issue" (Doc. 58 at 7), but it is QRG's burden to identify where the reasonable apprehension of suit lies in order to establish the court's jurisdiction over the claims made in its declaratory judgment complaint.  *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) ("In the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy.").

The documents identified above are the only ones adduced by the parties throughout the litigation that contain any references to specific products.  QRG has had ample time to produce any other documentation that would otherwise identify specific products that create a reasonable apprehension of an infringement

suit. Accordingly, the court will limit the instant litigation to QRG's QProx E2SR, QT110, QT113, QT9701, and QT1106 products. Because Nartron's November 27, 2001 letter referenced all five of the patents that have been named here, the court will permit all of them to remain within the scope of the litigation.

### III.      Conclusion

In accordance with the foregoing, the court will limit the claims and counterclaim in the instant litigation to those involving QRG's QProx E2SR, QT110, QT113, QT9701, and QT1106 products. All other claims are dismissed for lack of subject matter jurisdiction because the parties have failed to satisfy the "case or controversy" requirement of Article III and the Declaratory Judgment Act. As a result, the court will strike Nartron's pending motions for partial summary judgment. The court will defer amendment of the case management order pending mediation. An appropriate order will issue.

                                             SYLVIA H. RAMBO
                                             United States District Judge

Dated: August         , 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QRG, LTD., | CIVIL NO. 1:06-CV-1777 |
| Plaintiff, | JUDGE SYLVIA H. RAMBO |
| v. | JURY TRIAL DEMANDED |
| NARTRON CORPORATION, | |
| Defendant. | |

**O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The claims and counterclaim in the captioned case are limited to those involving QRG's QProx E2SR, QT110, QT113, QT9701, and QT1106 products, and Nartron's patents – U.S. patents: 4,731,548; 4,758,735; 4,831,279; 5,087,825; 5,796,183.  All other claims are **DISMISSED** for lack of subject matter jurisdiction.

2) Defendant Nartron Corporation's Motion for Partial Summary Judgment on Plaintiff QRG's Declaratory Judgment Claim for Unenforceability of the Five Nartron Patents-in-Suit (Doc. 42) and Motion for Partial Summary Judgment that the Nartron Patents-in-Suit are not Invalid (Doc. 47) are **STRICKEN**.

3) Disposition of the parties' Joint Motion to Revise Case Management Order (Doc. 60) is deferred pending the outcome of mediation.

       4) The parties shall notify the court no later than August 10, 2007, whether they intend to obtain their own mediator or request the court to appoint a mediator.

       5) Mediation shall be completed no later than September 14, 2007.

                                                   S/ Sylvia H. Rambo
                                                   United States District Judge

Dated:  August 1 , 2007.